UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAR'S PRODUCTS, INC.,

    Plaintiff/Counter-Defendant,          Case No. 10-14321

v.                                                 HONORABLE DENISE PAGE HOOD

BAR'S PRODUCTS INTERNATIONAL,
LTD. and ARTHUR OMOTO,

    Defendants/Counter-Plaintiffs.
_____/

**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.    BACKGROUND**

On October 27, 2010, Plaintiff Bar's Products, Inc. ("BP, Inc.") filed a Complaint against Bar's Products International, Ltd. ("BP International"). A First Amended Complaint was filed on March 31, 2011. On March 9, 2012, the Court entered an Order allowing BP, Inc. to file a Second Amended Complaint only as to Count I, Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114, and Count II, Trademark Infringement in Violation of the Lanham Act, 15 U.S.C. § 1125(a) against BP International and Arthur Omoto ("Omoto"). (*Id.*) The Court did not allow Count III, the Alternative Request for Declaratory Relief for Impending Infringement Violation if the Lanham Act , to move forward. (Order, Doc. No. 88) The Court also dismissed Defendants Bar's Inc. of Nevada and Bar's Inc. of California. (*Id.*)

On June 7, 2011, a second case was transferred to this District from the United States District Court, Central District of California filed by Bar's Products International, Ltd and Bar's, Inc., a Nevada corporation, against Bar's Products, Inc., a Michigan corporation (Plaintiff in the first

action). (Case No. 11-12456, *Bar's Products, International, Inc. v. Bar's Products Inc.*) On March 8, 2012, the Court entered an order dismissing without prejudice Case No. 11-12456, directing the parties to litigate the remaining claims and counterclaims in Case No. 10-14321. (Case No. 11-12456, Doc. No. 48) In Case No. 10-14321, an Answer and Counterclaim was filed by Defendants/Counter-Plaintiffs Bar's Products International, Ltd. and Arthur Omoto on May 1, 2012 alleging: Breach of Contract (Count I); Common Law Unfair Competition (Count II); and, Unfair Competition under California Business and Professions Code §§ 17200 *et seq.* (Count III).

BP, Inc., formerly known as "Fre-Bar, Inc.," owns and uses a number of marks dominated by the term "BARS" in connection with an extensive list of automotive products, including, without limitation, BAR'S PRODUCTS, BAR'S LEAKS, AND BAR'S XTREME, many of which are the subject of federal registration (the "BARS Marks"). BP, Inc. asserts it owns exclusive rights to the BARS Marks. In 1973, Fre-Bar, Inc. and BP International entered into various written agreements ("1973 Assignment Agreements") where Fre-Bar transferred to BP International its exclusive rights to various BARS product line and marks in all foreign countries except the United States and Canada.

In 2006, BP, Inc. acquired Rislone, a company which sells products competitive with the BAR'S LEAKS products sold by BP, Inc. in the United States as well as BAR'S LEAKS sold by BP International outside the United States and Canada. Since the acquisition, BP, Inc. has sold the Rislone products in and outside the United States. BP, Inc. concedes that it would be unable to sell its products under the BARS trademarks in those countries which BP International maintains its trademark rights, but that BP, Inc. should be able to sell Rislone products outside the United States.

BP International claims in its Counter-Complaint that BP, Inc. breached the 1973

Assignment Agreements by applying for foreign trademark registrations and offering to sell the BARS line of products outside the United States and Canada.

This matter is before the Court on a Motion for Partial Summary Judgment filed by BP, Inc. with respect to Counts I, II and III of the Counterclaim. A response and reply have been filed and a hearing held on the matter.

## II.     ANALYSIS

### A.     Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*,

477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Count I of Counterclaim, Breach of Contract

BP, Inc.'s main reason for its partial summary judgment motion to dismiss the breach of contract claim is that the 1973 Assignment Agreements do not include any non-competition clauses. BP, Inc. argues that even if there was an implied covenant not to compete in the 1973 Assignment Agreements, that provision is overbroad and against Michigan law. BP International responds that regardless of the existence or nonexistence of a covenant not to compete, BP Inc.'s conduct of selling Rislone products outside the United States constitutes a breach of contract. BP International argues that there remain genuine issues of material fact as to the scope of the 1973 Assignment Agreements, which is corroborated by the parties' subsequent course of dealings as to the parties' understanding of the scope of the 1973 Assignment Agreements. BP International asserts that even if the only basis for its Counterclaim is an implied covenant not to compete, the reasonableness of such covenant is a question of fact.

A plaintiff must establish the following to state a breach of contract claim: 1) that the parties entered into a valid enforceable contract that included the terms and conditions claimed by plaintiff; 2) that the defendant breached the contract; and, 3) that the defendant's breach caused a loss to the plaintiff. *Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich. 1986); *Pittsburgh Tube Co. v. Tri-Bend, Inc.*, 185 Mich. App. 581 (1990). In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id*. If the intent is clear from the language of the contract

itself, there is no place for further construction or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense." *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81 (1994). Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id.*

In Michigan, the sale of a business along with its accompanying good will rise to a covenant precluding the seller from soliciting back to himself that which he has sold. *Worgess Agency, Inc. v. Lane,* 66 Mich. App. 538, 544 (1976). Whether or not there exists an express covenant not to compete has no bearing on the existence of an implied covenant not to solicit the customers of a business which is sold along with its accompanying good will. *Id.* at 546. A sale of a business along with its good will gives rise to an implied covenant not to overtly attempt to recapture the very thing sold. *Id.* Whether or not the implied covenant is still effective cannot be answered as a matter of law. *Id.* The covenant to refrain from soliciting back to oneself that which was sold exists for no set length of time. *Id.* It is question of fact be determined by the trier of fact whether or not defendant refrained from solicitation for a sufficient length of time in order to allow the plaintiff to attract to itself and make its own that which defendant sold. *Id.*

All the 1973 Assignment Agreements (Motion, Exs. A-I, Pg ID 2215-2248 ) have similar language assigning certain rights to BP International as set forth in Exhibit C of BP Inc.'s motion which states in pertinent part:

> NOW THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged said Frederic D. Barton, individually, and Huki Lau, Inc., by these presents do sell, assign and transfer unto the said Bar's Products International, Ltd., all foreign business in any and all countries foreign to the United States except Canada including all right, title and interest in any and all such

5

> foreign inventions, patents, trade marks and applications therefor, together with the good will of the foreign business accompanying said foreign inventions, patents, trade marks and applications therefor; said foreign inventions, patents, trade marks and applications therefor; said foreign inventions, patents and trade marks including but not being limited to those enumerated in the attached SCHEDULE A; said foreign business including said foreign inventions, patents and trade marks to be held and enjoyed by said Bar's Products International, Ltd., for its own use and behoof, and for its legal representatives or assigns, to the full end of the term for which said foreign inventions, patents and trade marks may be granted, as fully and entirely as the same would have been held by us had this assignment and sale not been made.

(Motion, Doc. 89, Ex. C, Pg ID 2222)

The parties agree that certain inventions, patents and trademarks were assigned to BP International in 1973. It is clear from the above-quoted language that BP International is to hold and enjoy "to the full end of the term" of said foreign inventions, patents and trademarks. As to what constitutes the "full end of the term" remains an issue of fact since the moving party, BP, Inc., has not submitted any evidence that any of the "term" of the inventions, patents and trademarks have ended as to any of the products at issue. BP, Inc. has not carried its initial burden under Rule 56(a). BP International, on the other hand, has indicated it now owns more than 120 trademarks in over 50 countries and regions and that BP, Inc. has attempted to register marks which BP International currently owns. (Omoto Decl., ¶¶ 21-23, Pg ID 2458) There remains a genuine issue of material fact as to whether or not BP, Inc. has breached the various 1973 Assignment Agreements as to the trademarks assigned to BP International under the express language of the agreements.

The separate issue of whether the implied covenant not to solicit back or recapture what was assigned to BP International is currently in effect cannot be answered as a matter of law pursuant to the Michigan case, *Worgess,* noted above. The parties agree that it has been well over 30 years

since the 1973 Assignment Agreements.  However, as argued by BP International and acknowledged by BP, Inc., the parties, through the years in their course of dealing, have worked together in ensuring that each party sold the products as agreed to in the 1973 Assignment Agreements.  BP International sold the products outside the United States, other than Canada.  BP, Inc. sold the products within the United States and Canada.  (Omoto, Decl. ¶ 10, Pg ID 2455)  For many years, BP International depended on BP, Inc. to provide it with the finished, packaged products it sold internationally.  (Omoto Decl., ¶ 10, Pg ID 2455)  BP International obtained many of its sales leads and referrals from BP, Inc. and both parties participated together in the Automotive Aftermarket Products Expo to promote each others' products.  (Omoto Decl., ¶ 16, Pg ID 2457)

Based on the briefs and exhibits submitted by the parties, the Court finds there remain genuine issues of material fact as to whether BP, Inc. breached the express provision in the various 1973 Assignment Agreements as to the patents or trademarks held by BP, International and breached the implied covenant not to solicit back or to recapture what BP, Inc. assigned to BP International under the various 1973 Assignment Agreements.

**C.    Count II (Common Law Unfair Competition) and Count III (Unfair Competition under California Business and Professions Code) of the Counterclaim**

BP, Inc. also moves to dismiss Counts II and III based on the same reasons it argued as to the breach of contract claim in Count I.  Because the Court denies summary judgment on the breach of contract claim, the Court also denies summary judgment as to Counts II and III of the Counterclaim for the same reasons set forth above.

**III.    CONCLUSION**

The Court finds there remain genuine issues of material fact as to Counts I, II and III of the

7

Counterclaim,

Accordingly,

IT IS ORDERED that Bar's Products, Inc.'s Motion for Partial Summary Judgment With Respect to Counts I, II and III of the Counterclaim **(Doc. No. 89)** is DENIED. A new scheduling order will be issued.

                                    S/Denise Page Hood
                                    Denise Page Hood
                                    United States District Judge

Dated: April 11, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2013, by electronic and/or ordinary mail.

                                    S/LaShawn R. Saulsberry
                                    Case Manager